**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Donald Ray ELLIOTT,**
**Defendant–Appellant.**

No. 89–2217.

United States Court of Appeals,
Tenth Circuit.

Oct. 10, 1990.

William D. Fry, Asst. Federal Public Defender, Las Cruces, N.M., for defendant-appellant.

Joe M. Romero, Jr., Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before MOORE, ANDERSON and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

In a one-count indictment, Donald Ray Elliott was charged with willfully taking by force, violence, and intimidation $3,900 in currency from one Tamatha White, a teller in the Carlsbad National Bank, Carlsbad, New Mexico, a bank which was insured by the Federal Deposit Insurance Corporation, in violation of 18 U.S.C. § 2113(a). A jury found Elliott guilty of the charge contained in the indictment, and he was sentenced to 210 months of imprisonment to be followed by three years of supervised release. Elliott appeals his judgment of conviction and the sentence imposed thereon. We affirm his conviction but vacate the sentence and remand for resentencing.

On appeal, Elliott advances two reasons why his conviction should be reversed. First, improper remarks made by the prosecutor in his closing argument and, second, the bank teller's in-court identification of Elliott as the one who robbed the bank. We are not persuaded by either of these reasons and therefore affirm his conviction.

Someone robbed the Northgate branch of the Carlsbad National Bank, Carlsbad, New Mexico on October 26, 1988, by force and intimidation, and escaped with $3,900 in currency. The person handed a note to the teller which indicated that he was armed and instructed the teller to give him currency. The teller testified that when the robber raised his shirt she saw what appeared to be a gun. In any event, the teller complied with the robber's demand and gave him $3,900 in one-, five-, ten-, and twenty-dollar bills. The robber took the money and walked out of the bank.

At trial, the teller identified Elliott as the robber. Other government witnesses, including two police officers, testified that Elliott admitted robbing the bank. Other evidence tended to show that shortly prior to the robbery Elliott was short on funds, and that immediately after the robbery he had newly acquired resources.

Although Elliott did not testify, his defense was that he didn't rob the bank, and that somebody else committed the crime.

The first ground urged for reversal is that the prosecutor made improper closing argument. Elliott's girl friend testified in Elliott's behalf and stated that at about the time of the robbery Elliott had gone to a filling station to have a flat tire repaired and was then going to a Western Union

office to pick up $3,000 to $5,000 which was being wired by an out-of-state bank.

In his final closing argument to the jury, the prosecutor pointed out to the jury that no witness from Western Union or the out-of-state bank had corroborated the testimony of Elliott's girl friend, nor had any employee of the filling station corroborated the girl friend's testimony that at the time of the robbery Elliott was having a flat tire repaired. The prosecutor wound up with a flourish: "Where's the beef?"

Defense counsel objected to this argument on the ground that it was improper comment on the defendant's failure to testify. We disagree. "As long as evidence can be solicited other than from the mouth of the accused, it is proper to comment upon the failure of the defense to produce it." *See United States v. Gomez–Olivas*, 897 F.2d 500, 503 (10th Cir.1990) and the cases cited therein. The present case is well within the rule of *Gomez–Olivas*.

So far as we can tell from the record before us, the other comments of the prosecutor relied on by the defendant on appeal for reversal were not objected to in the district court. In any event, none constitutes such plain error as would dictate a reversal. Any mistatement of the evidence by the prosecutor was not of such proportion as to dictate reversal. We have read the entire closing argument of counsel, and although the argument on both sides was forceful, it was also, in our view, fair comment.

■ Prior to trial, defense counsel moved to suppress any in-court identification of Elliott by Tamatha White, the teller, on the ground that White's in-court identification, if permitted, would be impermissibly influenced by the fact that she had seen a photograph in a local newspaper of Elliott which identified him as the robber. After an evidentiary hearing, the motion was denied, and, at trial, White identified Elliott as the robber.

As indicated, the robbery occurred on October 26, 1988. Although White's observation of the robber was of relatively short duration, it was at close range. Ms. White thereafter assisted the Carlsbad police in creating a composite picture of the robber.

On November 3, 1988, after an F.B.I. agent secured a recent photo of Elliott, Ms. White was shown a photo spread containing seven photographs, including an up-to-date photo of Elliott. At that showing, Ms. White immediately selected Elliott's photograph as being a photo of the person who had robbed the bank.

At the time Ms. White identified an up-to-date photo of Elliott as being a photo of the robber, she also advised the agent that on October 31, 1988, she had seen the composite drawing of the robber, which she had assisted in making, and a 15–year old picture of Elliott in the local newspaper, and that Elliott was described in the article as being the person who had robbed the bank. However, in this connection, Ms. White stated to the agent that viewing the 15–year old photo of Elliott had not influenced her judgment since the 15–year old photo of Elliott did *not*, in many ways, really resemble the person who had robbed the bank. And she so testified at the suppression hearing.

In view of the fact Ms. White indicated that the 15–year old photo of Elliott did not resemble the robber, it is difficult to see how such event could be so impermissibly suggestive that she later identified a very recent picture of Elliott as being a picture of the robber, and then subsequently made an in-court identification of Elliott as the robber. In any event, we find no error in the district court's denial of the motion to suppress. Ms. White's viewing of the 15–year old photo of Elliott in the local newspaper was not, under the circumstances, "impermissibly suggestive," and most certainly "under the totality of the circumstances" did not violate any of Elliott's due process rights. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *Johnston v. Makowski*, 823 F.2d 387, 391 (10th Cir.1987), *cert. denied*, 484 U.S. 1026, 108 S.Ct. 750, 98 L.Ed.2d 763 (1988); *Baca v. Sullivan*, 821 F.2d 1480, 1481–82 (10th Cir.1987); and *United States v. Thurston*, 771 F.2d 449, 453 (10th Cir.1985).

■ As indicated, Elliott also challenges the lawfulness of the sentence imposed on

him, namely imprisonment for 210 months (seventeen and one-half years). Elliott was convicted under 18 U.S.C. § 2113(a), which authorizes a maximum term of imprisonment of twenty years. By statute, Congress directed the Sentencing Commission to promulgate guidelines which will "specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older" and is a so-called "career offender." 28 U.S.C. § 994(h). The Sentencing Commission implemented that Congressional mandate by promulgating § 4B1.1 of the Sentencing Guidelines.

At sentencing, Elliott did not dispute his offense level of thirty or his criminal history category of VI. Nor did he dispute that under the sentencing table, his sentencing range was from 168 months to 210 months.[1] As stated at the outset, the district court sentenced Elliott to 210 months imprisonment, and, on appeal, counsel asserts that the district court did not give a proper "reason" for imposing the maximum term permitted by the guidelines, as required by 18 U.S.C. § 3553(c)(1). Counsel concedes that in imposing a sentence within the guidelines range, the district court could consider the specific crimes previously committed by Elliott, but argues that 28 U.S.C. § 994(h) did not require the district court to impose the maximum sentence of 210 months.

It is agreed that where, as here, the guideline range exceeds 24 months, a district court must state its reason for imposing a sentence at a particular point within the range. Although the record is not entirely clear on this matter, it would appear that the district judge in imposing the maximum term within the guidelines was of the view that 28 U.S.C. § 994(h) strongly suggested, if indeed it did not require, that he impose the maximum term permitted by the guidelines. In this regard, the government in its brief at page 40 states that the district court imposed the maximum sentence within the applicable range due to "Elliott's status as a career offender and the mandate of 28 U.S.C. § 994(h)." We do not agree with that statement.

28 U.S.C. § 994(h) is a mandate to the Sentencing Commission to promulgate guidelines which will result in a guideline range "at or near the maximum term" authorized by statute (in our case 20 years) for so-called "career offenders." This the Commission presumably did by promulgating § 4B 1.1.[2] And Elliott was given a guideline offense level of thirty, which, with a criminal history category of VI, resulted in the guideline range for sentencing of 168 months to 210 months. However, we do not regard 28 U.S.C. § 994(h) as mandating, or even suggesting, that the district court in the instant case should set Elliott's sentence at the maximum permitted by the guideline range. It is conceded that Elliott qualified as a "career offender," but that does not mean that under 28 U.S.C. § 994(h) the district court was required to sentence him to 210 months. Rather, under the guidelines, Elliott, as a career offender, is subject to a sentence of somewhere between 168 and 210 months, and under 18 U.S.C. § 3553(c)(1) the district court must state its reason for imposing a particular sentence within the range. 28 U.S.C. § 994(h) is not a permissible "reason."

The judgment of conviction is affirmed. The sentence is vacated, and the case remanded for resentencing.

---

1. Such took into account the fact that by that time, if not at trial, Elliott accepted responsibility for the robbery.

2. A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. If the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply. A career offender's criminal history category in every case shall be Category VI.