UNITED STATES of America,
Plaintiff–Appellee,

v.

Frank SKORNIAK, Defendant–Appellant.

Nos. 94–3414, 94–3728.

United States Court of Appeals,
Eighth Circuit.

Submitted March 13, 1995.

Decided July 10, 1995.

Rehearings and Suggestions for Rehearing En Banc Denied Aug. 24, 1995.

David R. Stickman, Federal Public Defender, Omaha, NE, argued, for appellant.

Daniel A. Morris, Asst. U.S. Atty., Omaha, NE, argued, for appellee.

Before McMILLIAN, FAGG, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Frank Skorniak appeals from the final judgment entered by the district court[1] on his conditional pleas of guilty to one drug count and one money laundering count. Skorniak contends that the district court erred in denying several of his pretrial motions and in determining his sentence. We affirm.

## I.

Skorniak and Ted Luetticke were charged in a twelve-count second superseding indictment with various drug and money-laundering offenses. The indictment also contained a count seeking criminal forfeiture of certain items of real and personal property that Skorniak allegedly used to facilitate the charged substantive offenses. The district court severed the defendants' trials. Luetticke later pleaded guilty to one count of the indictment, and Skorniak proceeded to trial (pro se with standby counsel) after the district court denied several of his pretrial motions.

After completing approximately two and one-half weeks of trial to the court, Skorniak entered a conditional plea of guilty to two counts of the indictment. Skorniak pleaded guilty to conspiracy to distribute and possession with intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count I), and money laundering involving drug proceeds in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Count X). The plea agreement specifically preserved Skorniak's right to appeal the district court's adverse rulings on his pretrial motions.

At sentencing, Skorniak challenged the quantity of cocaine attributed to him and the recommendation in the Presentence Report (PSR) for an upward adjustment to his base offense level for his role in the offense. Skorniak also requested a two-level reduction for acceptance of responsibility. The district court held an evidentiary hearing, made findings of fact, and determined a base offense level of 32, added a three-level upward adjustment for Skorniak's role in the offense, and denied Skorniak's requested two-level reduction for acceptance of responsibility. The resulting total offense level of 35, combined with Skorniak's criminal history category of V, resulted in a Guidelines range of 262–327 months. The court then sentenced Skorniak at the bottom of the identified Guidelines range to 262 months of imprisonment on Count I, a concurrent term of imprisonment of 240 months on Count X, and a 5-year term of supervised release. Skorniak appeals.

## II.

### A. Motion to Suppress

Skorniak argues that the district court erred in failing to sustain his motion to suppress evidence. On July 7, 1992, Special Agent Lori K. Parsons of the Federal Bureau of Investigation (FBI) submitted an affidavit to a United States magistrate judge in support of an application for warrants to search Skorniak's condominium residence and its associated storage locker, the corpo-

---

1. The Honorable Lyle E. Strom, then Chief Judge, United States District Court for the District of Nebraska.

rate headquarters of Skorniak Enterprises, Inc., and a business known as Quality Merchandise. In the affidavit, Parsons relied upon information from five confidential informants who provided information concerning Skorniak's alleged criminal activities from 1986 through 1992. After the magistrate judge found probable cause to do so, the warrants were issued. Skorniak attacks the affidavit as insufficient to establish probable cause because it set forth no factual allegations indicating that any of the informants had previously supplied reliable information, it failed to show that the information provided by the informants was verified by independent investigation, and much of the information attributed to the confidential informants was set forth without disclosing their basis of knowledge. The district court, adopting the report and recommendation of the magistrate judge,[2] held that the affidavits supported a finding of probable cause for the issuance of the warrants and denied Skorniak's motion to suppress.

We decline to address the probable cause issue, however, because we hold that the objective good-faith exception to the exclusionary rule applies here. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *See also United States v. Wellman,* 33 F.3d 944, 946 (8th Cir.1994) ("We note that it is appropriate for us to apply *Leon's* standards to the facts developed in the District Court, even though that court did not pass on the issue"), *cert. denied,* —— U.S. ——, 115 S.Ct. 1722, 131 L.Ed.2d 580 (1995). Under *Leon,* evidence which is seized pursuant to a warrant which is later determined to be invalid will not be suppressed if the executing officers' reliance upon the warrant is objectively reasonable. *United States v. Frangenberg,* 15 F.3d 100, 102 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 161, 130 L.Ed.2d 99 (1994).

Parsons' affidavit outlines the following: Skorniak and Skorniak Enterprises, Inc. (of which Skorniak was the president) had been the targets of a joint task force investigation involving the FBI, the Internal Revenue Ser-

vice (IRS), and the Omaha, Nebraska, Police Department for three years. Skorniak's criminal history includes charges of possession of marijuana and possession of drug paraphernalia. The affidavit provides detailed information derived from confidential informants regarding Skorniak's involvement in numerous drug transactions and money laundering activities, along with his possession of various weapons. Additionally, Skorniak did not file tax returns in 1985, 1986, or 1988, and his returns filed in 1987, 1989, and 1990 indicated a nominal income ($265, $7992, and $573 respectively). Since 1987, he had only one known source of employment, as a real estate agent beginning in 1991, and company records indicated that he received only one sales commission during this time, in the amount of $740.88 for a $60,000 sale of real estate to Skorniak Enterprises, Inc. A $12,000 check drawn on the Skorniak Enterprises, Inc. account for the purchase bore Skorniak's name (Skorniak's signature was the only one authorized for the corporate accounts). Skorniak Enterprises, Inc. deposited in excess of $172,000 in its corporate bank accounts from August 31, 1990 to April 30, 1992 but reported a total income of $343 in 1990. Skorniak maintained at least nine personal bank accounts at various institutions in which deposits in excess of $88,000 were made since 1987. He also purchased a motorcycle with $4000 cash (paying primarily in $100 bills) and $9800 in platinum from an investment company in California.

Parsons' "affidavit related the results of an extensive investigation and ... provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause." *Leon,* 468 U.S. at 926, 104 S.Ct. at 3422. Skorniak does not contend, in either his initial brief or his reply brief, that the officers executing the search warrant did not act in a reasonable good-faith manner in relying on the warrant. "[G]iven the details included in the affidavit, its length, and [Skorniak's] failure to direct us to any material misstatements or omissions in the affidavit, [the executing officers']

---

**2.** The Honorable Kathleen A. Jaudzemis, United States Magistrate Judge for the District of   Nebraska.

reliance on the magistrate's probable cause determination was objectively reasonable." *United States v. Livesay,* 983 F.2d 135, 138 (8th Cir.1993). Thus, the principles of *Leon* are satisfied, and the district court's denial of Skorniak's motion to suppress can be affirmed.

### B. Psychological Examination of Witness

Skorniak next contends that the district court abused its discretion by refusing to order a psychological or psychiatric evaluation for his brother, Robert Skorniak, who testified on behalf of the government at the uncompleted trial. He argues that Robert Skorniak was not mentally competent to testify and offers several incidents to support this proposition: statements that Robert Skorniak allegedly made to FBI Agents in July of 1985 and June of 1990, his hospitalization for mental health problems as a child, and his alleged act of ingesting a large amount of cocaine.

"[T]he decision to order [a psychological] examination [of a witness] is entrusted to the sound discretion of the trial judge in light of the particular facts." *United States v. Riley,* 657 F.2d 1377, 1387 (8th Cir.1981) (internal quotations omitted). In *Riley,* we rejected an argument identical to that which Skorniak presently makes. In *Riley,* the defendant argued that the district court erred in denying his motion for a psychiatric examination of the government's chief witness because the denial impaired his ability to effectively cross-examine the witness and to prepare an adequate defense. *Id.* at 1387. We observed that "[o]rdering a witness to undergo a psychological examination is a drastic measure." *Id.* (internal quotations omitted). We went on to hold that the district court did not abuse its discretion in declining to order the witness to undergo such an examination because the defendant's showing of the need for such an examination, based only on defense counsel's affidavit detailing the witness's drug and alcohol abuse, was insufficient, and further, the defendant was not prejudiced because he was allowed to cross-examine the witness concerning these matters. *Id. See also United States v. Ramirez,* 871 F.2d 582, 584 (6th Cir.) (noting that "the court cannot

order a non-party witness to be examined by a psychiatrist. The most the court could do is condition such witness's testimony on a prior examination," and that such measures should be taken only in the most unusual circumstances), *cert. denied,* 493 U.S. 841, 110 S.Ct. 127, 107 L.Ed.2d 88 (1989).

■ Skorniak has not offered any reason why the results of any such examination of his brother was critical to his defense, other than the bare assertion that "Robert Skorniak was not competent to testify due to his mental state." (Appellant's Br. at 14.) This is insufficient to overcome the presumption embodied in Federal Rule of Evidence 601 that all witnesses are presumed competent to testify. *See United States v. Devin,* 918 F.2d 280, 291 (1st Cir.1990). Furthermore, Skorniak was allowed to cross-examine Robert Skorniak concerning his psychological problems as well as his history of drug and alcohol abuse. The issues Skorniak raises more appropriately go to Robert Skorniak's credibility, not his competency to testify. Given the wide latitude we afford the district courts in this area, the district court did not abuse its discretion in refusing to order a psychiatric evaluation of Robert Skorniak.

### C. Application for Subpoena of Medical Records

Skorniak next makes the related argument that the district court erred in denying his application to subpoena Robert Skorniak's medical records. Specifically, Skorniak sought "[a]ll medical records regarding all services, tests, test results, and any other notes, reports, charts and other documents prepared as a result of psychological or psychiatric testing or behavioral observation of Robert Skorniak during any stay at the facility." Skorniak contends that the district court's denial of this application was a violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because he had a legitimate interest in the disclosure of these documents and was prejudiced because he could not effectively impeach Robert Skorniak on cross-examination without them.

■ Here, Skorniak has made *no* showing that the records he sought were in the possession of the government. In *Riley,* we

stated that "[w]hile *Brady* requires the Government to tender to the defense all exculpatory evidence in its possession, it establishes no obligation on the Government to *seek out* such evidence." *Riley*, 657 F.2d at 1386 (internal quotations omitted). Also, as noted above, Skorniak was afforded the opportunity to fully cross-examine Robert Skorniak concerning Robert's mental condition. The denial of access to a witness's medical records does not impair a defendant's ability to cross-examine so long as the defendant "was not restricted in cross-examination and was able to put before the jury [the witness's] psychological and behavior problems, drug and alcohol abuse, hospitalization," and other relevant information. *Id.* at 1386–87.

The district court found that "[t]here is absolutely nothing—the record reflects that he left the hospital without being seen, so there are no findings in there with respect to it ... no tests were run ... there are no diagnoses or findings of any kind." (Trial. Tr. at 1272.) We conclude that the district court committed no error on this point.

### D. Forfeiture Issue

Skorniak next argues that the district court erred in failing to adequately inform him of the elements of the criminal forfeiture count at his change of plea hearing before he entered what he says is the functional equivalent of a plea of guilty to that count. Count XII of the indictment sought forfeiture of certain items of real and personal property owned by Skorniak, which he allegedly used to facilitate the drug and money laundering crimes. Under the terms of the plea agreement, Skorniak pleaded guilty to Counts I and X of the indictment, and the government agreed to dismiss the remaining counts at sentencing. The plea agreement further provided the government 30 days to effectuate civil forfeiture proceedings regarding the property listed in Count XII. (Trial Tr. at 1182.) Consistent with this agreement, the court dismissed all of the remaining counts, including Count XII, when it imposed sentence on Skorniak. Skorniak, who chose to be represented by separate retained counsel with respect to the forfeiture issues, negotiated with the government, entered into a stipulation with the government concerning what and how much was to be forfeited, and agreed to the entry of an order of forfeiture.

Skorniak argues that he effectively pled guilty to the criminal forfeiture count because the government had thirty days to commence civil forfeiture proceedings and, therefore, the district court committed reversible error because it failed to adhere to the requirements of Federal Rule of Criminal Procedure 11(c)(1) with respect to this count. We disagree. We have not previously determined whether Rule 11(c)(1) applies to criminal forfeiture actions and do not now hold that it does but, assuming for the purposes of the instant case that it does apply, we determine that it has no applicability to the instant facts. Rule 11(c)(1) explicitly requires the court to inform the defendant of "the nature of the charge to which the plea is offered." Fed.R.Crim.Proc. 11(c)(1). Skorniak did not enter a plea of guilty to the criminal forfeiture count, and the provision under the plea agreement allowing the government to institute a civil forfeiture action within 30 days is not the functional equivalent of a guilty plea. Pursuant to the terms of the plea agreement, the district court dismissed the criminal forfeiture count. The district court committed no error in failing to strictly adhere to the requirements of Rule 11(c)(1) with respect to the forfeiture count.[3]

### E. Sentencing Issues

Finally, Skorniak raises several issues concerning his sentence. First, he contends that the district court erred in assessing a three-level upward adjustment pursuant to U.S.S.G. § 3B1.1(b) for his role in the offense after the court determined that he was a manager or supervisor of the conspiracy. The district court stated that "[t]he role of organizer or leader of this conspiracy appears to be more properly assigned to [unindicted co-conspirator] David Baratta and possibly to [unindicted co-conspirator] Mark

---

**3.** We leave for another day and another case the determination of whether Rule 11 applies to criminal forfeiture counts.

Mora than to defendant." (R. at 14.) However, the court imposed the three-level upward adjustment after finding that Skorniak served as a funding source for other members of the conspiracy to purchase and distribute cocaine. (*Id.* at 14–15.) Skorniak argues that insufficient evidence exists showing that he played an aggravating role in the offense, such as recruiting accomplices or exercising control over other members of the conspiracy.

A sentencing court's determination of a participant's role in the offense pursuant to U.S.S.G. § 3B1.1 is a factual finding that we review under the clearly erroneous standard. *United States v. Maxwell,* 25 F.3d 1389, 1399 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 610, 130 L.Ed.2d 519 (1994). Section 3B1.1(b) of the Guidelines provides for a three-level upward adjustment in a defendant's base offense level if he "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants." U.S.S.G. § 3B1.1(b). Factors the district court should consider in making a determination under § 3B1.1 include "the nature of defendant's role in the offense, the recruitment of accomplices, [and] the degree of participation in planning or organizing the offense." *United States v. Ortiz–Martinez,* 1 F.3d 662, 677 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 355, 126 L.Ed.2d 319 (1993). "[W]e have noted that an individual can occupy a leadership role without having directly controlled his co-conspirators." *Id.*

Skorniak does not dispute that there were five or more participants in the offense. The PSR sets forth numerous drug transactions that Skorniak arranged for other members of the conspiracy. Additionally, Skorniak introduced Robert Skorniak to a relative who could supply additional cocaine as well as instructing him to discontinue dealing with Luetticke. Finally, the evidence indicates that Skorniak loaned funds to other members of the conspiracy for additional cocaine purchases and for business operations. Therefore, the district court's factual determination that Skorniak was a manager or supervisor under § 3B1.1(b) is not clearly erroneous.

Skorniak next argues that the district court erred in failing to grant him a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. Skorniak emphasizes that he accepted responsibility as evidenced by his guilty plea (albeit after over two weeks of trial) and his statement in the PSR: "I truly regret being involved in any and all illegal activities. I am very remorseful for my actions and accept full responsibility for my involvement." (PSR at para. 25.) The district court declined to grant Skorniak a reduction for acceptance of responsibility because he did not "demonstrate an acceptance of all of the relevant conduct involved in the crime charged, particularly his role in the offense." (R. at 16.)

We review a district court's factual findings with respect to a denial of a motion for acceptance of responsibility for clear error. *United States v. Newson,* 46 F.3d 730, 734 (8th Cir.1995). The Guidelines provide for a two-level reduction for acceptance of responsibility where a defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Because of the district court's unique vantage point, we will overturn the court's decision to deny an acceptance of responsibility reduction only if "it is without foundation." *United States v. Ransom,* 990 F.2d 1011, 1013 (8th Cir.1993) (internal quotation omitted). A defendant is not entitled to a reduction for responsibility by the mere act of entering a plea of guilty. *United States v. Yell,* 18 F.3d 581, 584 (8th Cir.1994). Finally, a defendant who denies relevant conduct that the court later determines to have occurred has acted in a manner inconsistent with clearly accepting responsibility. *United States v. Wyatt,* 19 F.3d 1283, 1285 (8th Cir.1994).

Here, the district court determined that Skorniak denied responsibility for certain relevant conduct making up his offense of conviction, i.e., conspiracy to deal drugs, and further found that he had not been forthright regarding his role in that offense. Given our careful review of the record and the wide discretion we afford district courts in making acceptance of responsibility determinations, we have no difficulty determining that the district court did not err in refusing

to grant Skorniak a reduction for acceptance of responsibility.

▮▮▮ Skorniak next contends that the district court erred by creating an unwarranted disparity between his sentence and the sentence of his co-conspirator, Ted Luetticke. Luetticke pleaded guilty prior to Skorniak and was sentenced to 60 months of imprisonment. Skorniak argues that the Guidelines were enacted to avoid a disparity in sentences between similarly situated defendants and that the disparity in this case violates his Fifth Amendment right to due process and his Eighth Amendment right to be free from cruel and unusual punishment. Skorniak observes that both Luetticke and he pleaded guilty to Count I of the indictment (the drug conspiracy count) but that several drug transactions were included in calculating his own drug quantity that were not included in calculating Luetticke's.

Although the Sentencing Guidelines were intended "to avoid unwarranted sentencing disparities among similarly situated defendants," mere variations in sentences among co-defendants do not mandate resentencing. *United States v. Jackson,* 959 F.2d 81, 83 (8th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 155, 121 L.Ed.2d 105 (1992). Rather, the defendant must show that the district court abused its discretion in imposing sentence. *Id.* Luetticke's criminal history category was II while Skorniak's is V, a factor which by itself creates a large difference in the range of available sentences for both offenders. The district court also granted Luetticke a two-level reduction for acceptance of responsibility for his conduct.

Moreover, the government's theory of the case was that Luetticke withdrew from the conspiracy in 1989 or 1990, thus making him unaccountable for the subsequent activities of the conspiracy for which Skorniak was held accountable. Finally, the terms of Luetticke's plea agreement held him accountable for five hundred grams to two kilograms of cocaine. As the able district judge noted, "[t]he fact that Mr. Skorniak was not able to negotiate the same plea agreement does not relieve Mr. Skorniak from being responsible for the amount of cocaine that was actually involved in the conspiracy." (Trial Tr. at 1394.) *See Jackson,* 959 F.2d at 83 (finding

no abuse of discretion in sentencing defendant to term of imprisonment approximately twice as long as co-defendant because co-defendant entered into plea with government before conspiracy terminated and thus less cocaine could be attributed to him and district court had right to accept the terms of co-defendant's guilty plea with government). Accordingly, we find no abuse of discretion in the sentence the district court imposed on Skorniak.

▮▮▮ Lastly, Skorniak contends that the district court erred in calculating the drug quantity attributable to him under U.S.S.G. § 1B1.3(a)(1)(B). The district court's drug quantity determination is a factual finding which we review for clear error. *United States v. Bieri,* 21 F.3d 811, 817 (8th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 208, 130 L.Ed.2d 138 (1994). We will reverse a drug quantity finding only if we are firmly convinced that a mistake has been made. *Maxwell,* 25 F.3d at 1397. When a defendant objects to the factual allegations contained in the PSR, the government must prove by a preponderance of the evidence the accuracy of the disputed facts before the district court may adopt them. *United States v. Greene,* 41 F.3d 383, 386 (8th Cir. 1994).

After holding an evidentiary hearing to resolve contested factual allegations in the PSR, the district court determined that Skorniak was accountable for more than five but less than fifteen kilograms of cocaine and therefore determined that the PSR's proposed base offense level of 32 was correct. In a supplemental sentencing memorandum, the court addressed several objections Skorniak made to the findings contained in the original sentencing memorandum and specifically determined that Skorniak was responsible for "at least 7,150 grams or 7.15 kilograms," and again set Skorniak's base offense level at 32. (R. at 28.) Skorniak argues that the district court erred by including transactions described in paragraphs 16(2)(b) and 16(2)(c) of the PSR in its drug calculation because insufficient evidence exists to establish that they were foreseeable to him.

▮▮▮ Skorniak does not challenge the district court's determination that he is respon-

sible for the quantities of cocaine outlined in the following paragraphs of the PSR: paragraph 16(1)–16.1 grams; paragraph 16(2)(a)–953.6 grams; paragraph 16(2)(d)–1000 grams; paragraph 16(2)(e)–2000 grams; paragraph 16(3)(a)–141.75 grams; paragraph 16(3)(c)–85.05 grams. Thus, the undisputed amount of cocaine for which Skorniak is chargeable is approximately 4196.50 grams. The district court further determined that Skorniak was responsible for 1000 grams of cocaine identified in paragraph 16(2)(b) of the PSR. This finding was based on the testimony of Mark Mora, an unindicted co-conspirator, whose testimony the district court expressly found to be credible. Mora stated that he purchased one kilogram from another unindicted co-conspirator, Dave Baratta. Skorniak was present during the transaction but immediately prior to its consummation, Mora observed Skorniak and Baratta handling approximately $4000–5000 in $10 and $20 bills. Finally, the district court found that Skorniak admitted that he was responsible for the 1953.6 grams set forth in paragraph 16(2)(c) and included this amount in its drug quantity determination.

After carefully reviewing the record, we hold that the district court's inclusion of 1000 grams of cocaine identified in paragraph 16(2)(b) of the PSR [4] and 1953.6 grams of cocaine identified in paragraph 16(2)(c) of the PSR is not clearly erroneous. These quantities, coupled with the undisputed quantities identified above, puts the amount of cocaine chargeable to Skorniak well in excess of 5 kilograms, which in turn generates a base offense level of 32. *See* U.S.S.G. § 2D1.1(c) (drug quantity table). The district court did not clearly err in setting Skorniak's base offense level at 32.

### III.

For the reasons articulated above, we affirm the judgment of the district court.

**4.** Although the district court did not explicitly include this quantity in its supplemental sentencing memorandum, it is clear from the court's calculations that it used this figure when it determined that Skorniak should be responsible for "at least 7,150 grams or 7.15 kilograms."