United States Court of Appeals

FOR THE EIGHTH CIRCUIT

No. 96-1292

United States of America,                    *
                                              *
        Appellee,                             *
                                              *   Appeals from the United
        v.                                    *   States District Court for
                                              *   the Eastern District of
Rodrigo Q. Rodriguez, Also Known              *   Missouri.
as Poncho, Also Known as Jose                 *
Luis Camacho Diaz,                            *
                                              *
        Appellant. *

No. 96-1735

United States of America,                     *
                                              *
        Appellee,                             *
                                              *
        v.                                    *
                                              *
Steven A. Glaus,                              *
                                              *
        Appellant. *

Submitted:  November 21, 1996

Filed:  May 5, 1997

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and BOGUE,[1] District Judge.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Rodrigo Rodriguez and Steven Glaus were indicted, along with eight others, for conspiracy to distribute, and to possess with the intent to distribute, more than one kilogram each of heroin and methamphetamine. See 21 U.S.C. § 841(a)(1), § 846. The conspiracy was alleged to have existed between December, 1992, and June, 1995. After a seven-day trial, a jury convicted both defendants and three co-defendants whose cases we do not address in this opinion (a fourth co-defendant whose case we do not address here was convicted after a separate two-day trial). See also United States v. Bryson, Nos. 96-1265/1359/1362 (8th Cir. Apr. 7, 1997).

The trial court sentenced Mr. Rodriguez to 292 months in prison, Mr. Glaus to 300 months in prison and a $2,700 fine. Both defendants appeal their sentences. We remand both cases for resentencing by the trial court.

I.

At sentencing, the trial court attributed from three to ten kilograms of heroin and/or methamphetamine to Mr. Rodriguez, which meant that his base offense was set at level 34 under the federal sentencing guidelines. See U.S.S.G. § 2D1.1(a)(3), § 2D1.1(c)(3). The trial court also found that Mr. Rodriguez was an organizer or leader in a crime that involved five or more participants or was otherwise extensive; that finding added four levels to Mr. Rodriguez's offense level. See U.S.S.G. § 3B1.1(a). Finally, the trial court refused to allow a two-level decrease for

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

-2-

acceptance of responsibility, see U.S.S.G. § 3E1.1, and instead imposed a two-level increase for obstruction of justice, see U.S.S.G. § 3C1.1.

Mr. Rodriguez challenges all of those decisions by the trial court and argues in addition that the trial court should have applied to him a provision in the drug laws that requires a trial court to impose a sentence below a statutory minimum if the defendant meets certain criteria. See 18 U.S.C. § 3553(f). We consider Mr. Rodriguez's arguments in turn and look first to the amount of drugs appropriately attributed to him. (Mr. Rodriguez's given name is actually Jose Luis Camacho Diaz, but since he was indicted, tried, convicted, and sentenced under the name "Rodrigo Rodriguez," we use it in this opinion for the sake of simplicity.)

Robert Avila (a co-defendant who pleaded guilty and testified for the government) testified that Mr. Rodriguez was his sole source for heroin and his primary source for methamphetamine. Mr. Avila also testified that when he personally did not send to others the heroin and methamphetamine that he got from Mr. Rodriguez, he gave Mr. Rodriguez the addresses where the drugs should go and that Mr. Rodriguez then packed the drugs and sent them to those addresses through a private shipping service. The owner of the private shipping service testified that in the relevant 22-month period, Mr. Avila or someone who was sent by Mr. Avila (whom for the purposes of this opinion we will presume to be Mr. Rodriguez or one of his workers) used the service approximately six times per month (which would total 132 packages).

Even assuming, however, that most of those packages contained heroin or methamphetamine from Mr. Rodriguez, we have no evidence of how much of either drug was in any individual package, despite Mr. Avila's testimony that he bought from fifteen to eighteen grams

-3-

of heroin from Mr. Rodriguez in the last six months of 1993, that he sent from four to six ounces of heroin and approximately four ounces of methamphetamine to St. Louis in the first six months of 1994, that he sent from eight to twelve ounces of heroin and from four to eight ounces of methamphetamine to St. Louis in the last six months of 1994, and that he sent from four to five ounces of heroin and from eighteen to twenty ounces of methamphetamine to St. Louis in the first three months of 1995 (for a maximum total of almost twenty-four ounces of heroin and approximately thirty-two ounces of methamphetamine -- or 1,588 grams, for sentencing purposes). That total is far less than the three kilograms necessary to sustain the base offense level given to Mr. Rodriguez.

At sentencing, the government suggested that it would be reasonable to attribute one ounce of drugs to each package. The difficulty with that approach, as we see it, however, is that it amounts to little more than speculation, especially since the owner of the private shipping service testified that sometimes Mr. Avila brought in unsealed packages that contained only "clothes, personal items, that sort of thing." There is nothing in the record from which we can discern how many packages had drugs and how many did not.

In addition, the government relied exclusively on its suggested method of calculating the drug amounts and disclaimed reliance on drug amounts attributable to Ronnie and Henrietta Furnish (co-defendants whose cases we do not address here). We are therefore unclear about whether amounts attributable to the Furnishes could be used with respect to Mr. Rodriguez. Finally, because the trial court made no specific findings with respect to whether drugs attributable to Linda Bryson and Paul Logan (co-defendants whose cases we do not address here) could also be attributed to Mr. Rodriguez, we are uncertain on that question as

well.  We therefore remand Mr. Rodriguez's case for resentencing in light of all of these uncertainties.  See, e.g., United States v. Randolph, 101 F.3d 607, 609 (8th Cir. 1996), and United States v. Caldwell, 88 F.3d 522, 527 (8th Cir. 1996), cert. denied, 117 S. Ct. 625 (1996).

II.

The trial court found that Mr. Rodriguez was an organizer or leader in a crime that involved five or more participants or was otherwise extensive.  See U.S.S.G. § 3B1.1(a).  Mr. Rodriguez contends that the trial court's determination in that respect was clearly erroneous.  See, e.g., United States v. Maxwell, 25 F.3d 1389, 1399 (8th Cir. 1994), cert. denied, 115 S. Ct. 610 (1994).  We disagree.

The adjustment for being an organizer or leader is intended to reflect relative responsibility compared to other participants in the crime.  See U.S.S.G. § 3B1.1, background.  In deciding whether to apply the adjustment, a court should consider the defendant's decision-making authority, the nature of the defendant's participation in the crime, whether the defendant recruited accomplices, whether the defendant claimed a right to more profits from the crime, the degree of the defendant's participation in planning or organizing the offense, the nature and scope of the crime, and the degree of the defendant's control and authority over others.  See U.S.S.G. § 3B1.1, application note 4.  We also note that the five-participant requirement does not necessarily mean five participants under Mr. Rodriguez's direction (as he seems to contend in his brief) but, instead, five persons (including Mr. Rodriguez) involved in the overall crime, only one of whom need have been under Mr. Rodriguez's direction. See U.S.S.G. § 3B1.1, application note 1, application note 2; and United States v.

Boutte, 13 F.3d 855, 860 (5th Cir. 1994), cert. denied, 513 U.S. 815 (1994).

Evidence was presented at trial (no additional evidence was presented at sentencing) from which the trial court could infer that, at one time or another during the period of the conspiracy, Mr. Rodriguez was in charge of at least four houses where people could order heroin by telephone. At Mr. Rodriguez's direction, runners would then deliver the drugs to the customer at some other place. There were at least two runners at two of the houses and possibly three runners at one house. Mr. Avila and Mr. Rodriguez acted together to arrange shipments of drugs to various people in St. Louis, including Steven Glaus (a co-defendant), who received some packages of two to three ounces of heroin, an amount from which the trial court could easily infer an intent for or knowledge of, on the part of Mr. Rodriguez, further distribution by the recipient of the drugs. We believe that all of that evidence is sufficient to sustain the trial court's finding that Mr. Rodriguez was an organizer or leader in a crime that involved five or more participants or was otherwise extensive. See, e.g., United States v. Flores, 959 F.2d 83, 86-87 (8th Cir. 1992), cert. denied, 506 U.S. 976 (1992).

III.

In deciding whether to grant a two-level decrease in offense level for acceptance of responsibility, a court should consider whether the defendant truthfully admitted the acts involved in the crime and in any additional relevant conduct and whether the defendant did so in a timely manner. See U.S.S.G. § 3E1.1, application note 1(a), application note 1(h). We review for clear error a trial court's refusal to grant a decrease for acceptance of responsibility. See, e.g., United States v. Johnigan, 90 F.3d 1332, 1338 (8th Cir. 1996).

-6-

Mr. Rodriguez testified at trial. He stated that beginning in mid-1993, even though he "didn't want to," he worked for Mr. Avila in various houses where people could order drugs by telephone, specifically heroin (and cocaine). Mr. Rodriguez contended that the houses were rented and furnished by Mr. Avila, who also supplied the drugs. Mr. Rodriguez stated that he worked alone but knew of one house where two people worked. Later, he testified, he worked at a few different houses with his cousin as a co-worker. Mr. Rodriguez specifically denied packing and sending drugs through the private shipping service; he contended, moreover, that he never provided or sold any methamphetamine to Mr. Avila. In contrast, Mr. Avila testified at trial that his sole source for heroin and his primary source for methamphetamine was Mr. Rodriguez and that Mr. Rodriguez packed and sent both types of drugs through the private shipping service at his direction.

Obviously, the testimony of Mr. Avila and that of Mr. Rodriguez are in conflict in several material ways. It was the trial court's prerogative, however, to credit the testimony of Mr. Avila and to discount the testimony of Mr. Rodriguez. See, e.g., United States v. Campos, 87 F.3d 261, 264 (8th Cir. 1996), cert. denied, 117 S. Ct. 536 (1996). In doing so, the trial court necessarily also determined that Mr. Rodriguez was not completely truthful about his actions in support of the crime and, accordingly, that Mr. Rodriguez had not accepted responsibility for those actions. We see no clear error in that determination. See, e.g., United States v. Thomas, 93 F.3d 479, 489 (8th Cir. 1996); United States v. Campos, 87 F.3d at 264-65; and United States v. Contreras, 927 F.2d 1058, 1059 (8th Cir. 1991), cert. denied, 502 U.S. 929 (1991).

A court may increase a defendant's offense level by two levels for obstruction of justice if the court decides that the defendant

committed perjury.  See U.S.S.G. § 3C1.1, application note 3(b).  We review for clear error a trial court's determination  in that regard.  See, e.g., United States v. Kime, 99 F.3d 870, 886 (8th Cir. 1996), cert. denied, 117 S. Ct. 1015 (1997).

At sentencing, after discussion with the lawyers for the government and for Mr. Rodriguez in which they argued about both the extent of "deceit" associated with Mr. Rodriguez's trial testimony and the contradictions between his testimony and Mr. Avila's testimony, the trial court simply "den[ied]" Mr. Rodriguez's objection to the two-level increase.  Ordinarily, we believe that in considering whether a defendant obstructed justice, it is preferable for a court to make specific findings with respect to instances of perjury by a defendant.  The nature and extent of the discussion in this case, however, are sufficient for us to hold that the trial court's decision to impose the two-level increase for obstruction of justice is not clearly erroneous.  See, e.g., United States v. Thomas, 93 F.3d at 489; United States v. Wonderly, 70 F.3d 1020, 1025 (8th Cir. 1995), cert. denied, 116 S. Ct. 1443 (1996); United States v. Maxwell, 25 F.3d 1389, 1400 (8th Cir. 1994), cert. denied, 115 S. Ct. 610 (1994); and United States v. Ryan, 9 F.3d 660, 672-73 (8th Cir. 1993), aff'd in pertinent part, 41 F.3d 361 (8th Cir. 1994) (en banc), cert. denied, 115 S. Ct. 1793 (1995).

We note that among the criteria for the imposition of a sentence below a statutory minimum is the requirement that the defendant was not an organizer or leader in the crime.  See 18 U.S.C. § 3553(f)(4).  As discussed above, we see no clear error in the trial court's finding that Mr. Rodriguez was an organizer or leader in this case.  He is therefore not eligible for the imposition of a sentence below the statutory minimum applicable in this case.

IV.

The difficulties with respect to the relevant amount of drugs, and hence the appropriate base offense level, that infect Mr. Rodriguez's sentence also infect Mr. Glaus's sentence. The evidence at trial supports a finding that Mr. Glaus was specifically associated with two sales to a government informant, totaling roughly fifty-two grams of methamphetamine; with almost twenty-four grams of heroin recovered after a burglary of his house; and with almost forty-eight grams of heroin recovered from a package that was intercepted by the police (for a total of approximately 124 grams). Construed most harshly, the evidence also ties Mr. Glaus to six or seven shipments of one ounce of methamphetamine (approximately 198 grams) and nine additional packages of drugs (documented by receipts). Even assuming, however, that each of those nine packages contained three ounces of heroin (the most that was ever sent to Mr. Glaus at one time, according to the testimony of Mr. Avila), that total of approximately 765 grams plus the other amounts specified above (322 grams) aggregate to only 1,087 grams, far less than the three kilograms necessary to sustain the base offense level given to Mr. Glaus.

It is true that the owner of the private shipping service (through which Mr. Avila sent the packages of drugs) testified that Mr. Avila or someone who was sent by him used the service approximately six times per month over the relevant 22-month period. It is also true that Mr. Avila testified that he eventually sent two to three ounces of heroin at a time to Mr. Glaus. Mr. Avila did not testify, however, about the frequency with which he sent heroin to Mr. Glaus after the amounts increased to two to three ounces. We know, moreover, that Mr. Avila was sending methamphetamine to Linda Bryson (a co-defendant whose case we do not address here) during the same period.

Finally, at sentencing, although the probation officer testified that she relied on "information provided by the government" to arrive at the figure of three to ten kilograms of drugs attributable to Mr. Glaus, she also testified that she did not read a trial transcript, that she did not use records of the private shipping service, that she did not use Mr. Avila's testimony to find specific amounts, and that she did not personally add up the total given to her by the government. The trial court, moreover, made no specific findings with respect to drugs attributable to other defendants that could also be attributed to Mr. Glaus. Under all of these circumstances, we are concerned that the quantity of drugs that could or should be attributed to Mr. Glaus is just too uncertain at this point to sustain a base offense level that requires at least three kilograms. We therefore remand his case for resentencing in light of the uncertainties described. See, e.g., United States v. Caldwell, 88 F.3d 522, 527 (8th Cir. 1996), cert. denied, 117 S. Ct. 625 (1996), and United States v. Alexander, 982 F.2d 262, 267-68 (8th Cir. 1992).

V.

Mr. Glaus challenges the trial court's imposition of a three-level increase in offense level for being a manager or supervisor in a criminal activity that involved five or more participants or was otherwise extensive. See U.S.S.G. § 3B1.1(b). Mr. Glaus contends that there was no evidence showing his management or supervision of any other participant in the conspiracy (he does not contest the size or scope of the conspiracy). See U.S.S.G. § 3B1.1, application note 2.

That argument borders on the frivolous, in our view. Two police officers and a government informant testified at trial (no additional evidence was presented on this point at sentencing) that the government informant set up a methamphetamine purchase by

-10-

paging Mr. Glaus, who instructed the government informant that the person delivering the drugs would be wearing a jacket with "Arizona" on it. A person who was not Mr. Glaus subsequently arrived, wearing the jacket, in what Mr. Glaus concedes was Mr. Glaus's car. We see no clear error in the trial court's determination that Mr. Glaus managed or supervised at least one other participant in the crime and was therefore a manager or supervisor in a crime that involved five or more participants or was otherwise extensive. See, e.g., United States v. Skorniak, 59 F.3d 750, 757 (8th Cir. 1995), cert. denied, 116 S. Ct. 487 (1995).

## VI.

In determining the appropriate drug amounts to be attributed to a defendant, a court may "approximate the quantity of the controlled substance" by considering such matters as "the price generally obtained for the controlled substance, financial or other records, [and] similar transactions in controlled substances by the defendant." See U.S.S.G. § 2D1.1, application note 12. We understand the difficulty that the trial court faced in attempting to approximate the relevant drug amounts for Mr. Rodriguez and Mr. Glaus from trial testimony that was often imprecise and sometimes even contradictory. We believe, however, that the approximations reached by the trial court have simply too tenuous a connection to the evidence presented at trial to sustain the base offense levels that were assigned. For the reasons stated, therefore, we remand for resentencing the cases of Mr. Rodriguez and Mr. Glaus.

A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-