**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 27 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

JOSE HERNANDEZ,

     Defendant-Appellant.

No. 96-6364
(D.C. No. CR-96-30-T)
(Western District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Submitted on the Briefs:

Before **PORFILIO**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

Jose Hernandez appeals his conviction of conspiracy to distribute methamphetamine; possession with intent to distribute and distribution of methamphetamine; and maintaining a place for the purpose of manufacturing

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

methamphetamine. Mr. Hernandez was sentenced to twenty-nine years in prison to be followed by five years of supervised release. He raises three issues here. First, he contends he was deprived of a fair trial when a co-defendant, whose counsel participated in jury selection and exercised several peremptory challenges, pled guilty and testified for the government. He next argues the trial court failed to make sufficient findings to justify a four-level enhancement of his sentence based on his role in the offense. Finally, because the guideline range of punishment exceeded twenty-four months, he posits the court erred under 18 U.S.C. § 3553(c)(1) by not articulating the reason for his sentence. The government concedes the third issue, agreeing remand is appropriate. We affirm on the remaining issues.[1]

Just before trial commenced, the district court permitted co-defendant William Smith's retained attorney, Ray Gene Smith, to withdraw and appointed substitute counsel. Ray Gene Smith, however, had already participated in jury selection. William Smith then changed his plea to guilty and agreed to testify for the government.

Prior to opening statements, defendant Hernandez objected to the composition of the entire jury panel. In a rather obscure objection, counsel claimed the withdrawal of Mr. Ray Gene Smith following his participation in jury selection "may somehow, some

---

[1]The facts of this matter are set forth in the court's opinion on the appeal of co-defendant Santiago Cruz Camacho. *United States v. Camacho*, ___ F.3d ___, No. 96-6361, 1998 WL 88159, at *1 (10th Cir. Okla. Mar. 3, 1998). We need not repeat them here.

way, have affected the makeup of this jury." Counsel did not elucidate. The court briefly described why Mr. Smith was permitted to withdraw, pointing out the genesis of the act was Mr. Smith's uncertain qualification to practice because of confusion over his Texas CLE credits. In any event, said the court, "there's not a thing in the world that could possibly affect this trial or taint this trial or prejudice either of these defendants."

On appeal, Mr. Hernandez complains he was placed in an untenable position. He argues: "The selection of that jury was therefore tainted by Smith's ulterior motive to have that jury believe his testimony and ultimately gain favor for his own predicament." Nothing in the record supports this bit of hyperbole. Indeed, from counsel's own statement to the district court, counsel was "more or less making this objection on the record so that there may be no future assertion -- assertions that we did not properly represent our clients."

From this precautionary gesture, counsel has tailored his argument to a more engaging fit in this court, claiming his client's right to jury selection was adversely affected because his interests and those of his co-defendant were diverse. The conflict of interest he constructs is hypothetical because he cites no support for it in the record. Nonetheless, he posits through a "contrivance" William Smith's attorney helped select a jury for a man who then testified for the government. That is, he explains, one with no authority to practice law "meddled" with one who did. "The unauthorized practice of law

cannot be condoned nor perceived as harmless conduct when it influences the defendant's jury in criminal litigation," he urges.

Notwithstanding this alleged contrivance, counsel did not move for a mistrial. He did not complain co-defendant Smith used too many of his peremptory challenges or knew of the defense's jury selection strategy. He does not seem to argue the denial or impairment of the use of a peremptory challenge is reversible error without a showing of prejudice. Indeed, he quantifies no prejudice emanating from the conduct about which he complains. Instead, his only contention is over an assumed conflict of interest arising from an attorney's participation in the selection process when that attorney was arguably unqualified to practice law because he had not amassed enough CLE hours. We, like the district court, find this argument sophistic.

"The peremptory challenge is a right to exclude potentially prejudiced jurors, not to select favorable ones, and in multiple defendant trials a co-defendant must use his peremptory challenges in conjunction with the other defendants even if it means losing a favorable juror or having to use a challenge in a way other than he would like." *United States v. Philips*, 874 F.2d 123, 131 (3d Cir. 1989). In that case, defendants in a RICO prosecution complained a co-defendant's participation in jury selection of the last three alternates only to plead on the eve of trial was cause for a mistrial. The court held the remaining defendants failed to show how their peremptory challenges were in any way

impaired or how the presence of the co-defendant who later pled guilty altered the composition of the jury.

The Sixth Amendment requires an impartial jury, and the district court has the responsibility to guarantee the jury is fair and impartial. *United States v. Gillis*, 942 F.2d 707, 709 (10th Cir. 1991). Because the voir dire procedures are committed to the court's discretion and counsel cannot articulate how the court here abused that discretion, we reject his claim.

Mr. Hernandez next contends the district court failed to make proper findings of his leadership role in the offense to justify an enhancement under U.S.S.G. § 3B1.1(a). Instead, he argues, the court made a legal conclusion from its observations of the record. However, he insists, "It is uncontested that five or more people were participants in the criminal activity involved in this case. What is contested is the lack of specific factual findings from the evidence in this case to support the factors enumerated in [*United States v.*] *Lacey*, [86 F.3d 956 (10th Cir. 1996)] to justify a leadership enhancement." Without that specificity, Mr. Hernandez complains this court must engage in speculation and appellate fact-finding.

At the conclusion of the sentencing hearing, the district court made specific findings of the sentencing factors. In part, the court stated:

> Finally, with regard to the leadership role, that is an easy one. Mr. Hernandez was the top person in this conspiracy, he controlled others, he controlled the trafficking of the drugs, he was the supplier of Camacho, he was the head of this conspiratorial group, he was the primary source of the

drugs, he was the leader and organizer. That is consistent with the overwhelming evidence in the trial and in the hearings that we've had in connection with this case. Mr. Hernandez was, indeed, the leader, and qualifies in every way for the leadership role ....

In its written findings on sentencing, the court stated:

The evidence presented at the sentencing hearing established that in excess of five individuals were involved including, Jeff Manning, Carie Bolen, Mauro Cruz Barragan, a/k/a Mario Salado, William Smith, Santiago Cruz Camacho, Nicky Jarnagin, Lillian Bean, Priscilla Gonzales, Ladita Meadors, Tracy Oxley, Todd Furra, and others. Additionally, the defendant controlled the activity of others, particularly Mauro Cruz Barragan, a/k/a Mario Salado, who he recruited. Hernandez was clearly the leader of this conspiracy. This was supported by the evidence presented at the sentencing hearing and at the jury trial.

Although these findings are not extensive, they meet the minimal test prescribed by

*United States v. Wacker*, 72 F.3d 1453, 1476 (10th Cir. 1995). The district court found

defendant participated in a conspiracy of more than five persons and that he controlled

Mario Salado. That is sufficient to justify the enhancement. *United States v. Rodriquez*,

112 F.3d 374, 377 (8th Cir. 1997); *United States v. Camacho*, ___ F.3d ___, No. 96-

6361, 1998 WL 88159, at *2-3 (10th Cir. Okla. Mar. 3, 1998).

Finally, the government concedes the court failed to comply with 18 U.S.C.

§ 3553(c)(1). That section provides:

The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence --

(1) is of the kind, and within the range, described in subsection (a)(4) and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range ....

We have read this provision to permit limited appellate review of the substance of the reasons provided by the district court, *United States v. Elliott*, 915 F.2d 1455, 1458 (10th Cir. 1990), but the district court must provide a sufficient reason for the sentence imposed. *Id.* We must remand for those findings.

The judgment of the district court is **AFFIRMED**, but the case is **REMANDED** for findings in accordance with this order and judgment.

ENTERED FOR THE COURT

John C. Porfilio
Circuit Judge