_____

No. 95-2113
_____

United States of America,      *
        *
      Appellee,      *
        * Appeal from the United States
   v.        * District Court for the
        * Western District of Missouri.
Cesar Campos,      *
        *
      Appellant.     *
_____

Submitted:  March 11, 1996

Filed:  June 27, 1996
_____

Before McMILLIAN, BEAM, and HANSEN, Circuit Judges.
_____

BEAM, Circuit Judge.


The district court[1] sentenced Cesar Campos to 168 months (14 years) in prison following his guilty plea to one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846.  Campos appeals his sentence.  Because we find no error in the district court's application of the sentencing guidelines, we affirm.

## I.  BACKGROUND

In October 1993, Campos was arrested in New York City for his role in the distribution of cocaine in Kansas City, Missouri.  A federal grand jury returned a single-count indictment charging Campos with conspiracy to possess with intent to distribute cocaine.  Campos pleaded guilty to that charge on March 8, 1994,

_____

[1]The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

and his case proceeded to sentencing.  At the sentencing hearing, three issues were in dispute:  1) the amount of cocaine for which Campos would be held responsible; 2) Campos' entitlement to credit for acceptance of responsibility for the offense; and 3) Campos' eligibility for an upward adjustment for an aggravating role in the offense.

The government called four witnesses to describe the complex Kansas City cocaine trafficking operation and to identify Campos as its major source of supply in New York City.  Three of these witnesses, Andrew Miguel Melo, Thomas Hedges, and Michael Kern, were directly involved in the drug distribution scheme.  The fourth witness, FBI Agent Dennis Conway, had headed the investigation of the trafficking ring and had interviewed several of Campos' co-conspirators concerning the drug operation.  According to these witnesses, Campos' cocaine trafficking activities in Kansas City began in 1987.  At that time, Melo moved from New York City to Kansas City to be near his girlfriend.  There, Melo met Hedges, and the two became partners in the trafficking of small amounts of cocaine.  However, due to the demands of Kern, a regular customer, Melo and Hedges soon required a supplier who could provide cocaine in kilogram amounts.  Campos, a New York City resident, became this supplier.

Campos, accompanied by two couriers, personally made one cocaine delivery to Kansas City in 1987.  Melo, Hedges and Kern testified that after that delivery they obtained additional amounts from Campos in various ways.  On some occasions, Melo and Hedges, and sometimes Kern, would travel to New York where they would obtain cocaine from Campos or from couriers naming Campos as their source of supply.  On others, Campos would send couriers to Kansas City to deliver cocaine.  The government contended that Campos had a hand in the distribution of approximately forty kilograms of cocaine in Kansas City prior to his arrest.

Campos presented a very different version of his involvement in Kansas City drug trafficking. Taking the stand in his own defense, Campos acknowledged that he had made one trip to Kansas City to deliver cocaine. He testified, however, that he supplied Hedges and Melo only four more times in New York City, and that he had sent only two additional kilograms to Kansas City through couriers. Campos insisted that he had distributed no more than eight pounds (approximately 3.5 kilograms) of cocaine during his association with Hedges and Melo. In support of his testimony, Campos submitted the results of a polygraph examination he had taken and the testimony of Bruce Howell, a polygraph examiner. Howell testified that the results of the polygraph examination indicated Campos' admissions regarding drug quantity were truthful.

At the conclusion of the sentencing hearing, the district court found that Campos was responsible for the distribution of between fifteen and fifty kilograms of cocaine. The court also concluded that Campos was not entitled to a reduction in offense level for acceptance of responsibility. Finally, the court determined that the facts did not warrant an offense-level increase for an aggravating role in the crime. These findings yielded an offense level of thirty-four, a criminal history category of I, and a sentencing range of 151-188 months under the sentencing guidelines. The court sentenced Campos to 168 months in prison.

On appeal, Campos argues that the district court's drug quantity determination is clearly erroneous. Campos further argues that the district court violated his right to due process by relying on hearsay statements in making its sentencing determinations. Finally, Campos argues that the district court erred in failing to grant him a two-level reduction for acceptance of responsibility.

## II. DISCUSSION

### A. Drug Quantity

Campos first argues that the district court erred in determining the drug quantity involved in the offense. At sentencing, the government must prove drug quantity by a preponderance of the evidence.[2] See, e.g., United States v. Pugh, 25 F.3d 669, 676 (8th Cir. 1994); United States v. Wiley, 997 F.2d 378, 385 (8th Cir.), cert. denied, 114 S. Ct. 600 (1993). We will not reverse the sentencing court's drug quantity determination unless the defendant proves that determination is clearly erroneous. Wiley, 997 F.2d at 385. Campos has failed to do so here.

Ample evidence supported the district court's quantity findings. Three witnesses testified regarding their personal contacts with Campos and his couriers. All three witnesses identified Campos as the primary source of the cocaine they received. All three also testified that Campos provided the operation quantities of cocaine which were well within the range of the district court's findings. Finally, these witnesses all gave similar accounts of the various participants in the conspiracy and

---

[2]Campos argues that the district court concluded drug quantity should be proved by clear and convincing evidence, and urges us to adopt that same standard. Relying on United States v. Kikumura, 918 F.2d 1084 (3d Cir. 1990), Campos contends that because drug quantity has an extreme impact on the length of his sentence, due process requires that the amount of cocaine be proved by clear and convincing evidence. That argument is without merit. First, a careful reading of the district court's opinion shows the court recognized that drug quantity need only be proved by a preponderance of the evidence (although it found clear and convincing evidence supporting its quantity determination). Second, although we have indicated there may be cases where a sentencing factor has such a disproportionate effect on a sentence that due process would require a higher burden of proof, see United States v. Townley, 929 F.2d 365, 369 (8th Cir. 1991), this is not such a case.

-4-

their corresponding roles in the drug operation. This testimony was corroborated by information obtained from pen registers the FBI used to monitor the telephones of Melo's girlfriend and Hedges. As Agent Conway noted, these pen registers documented several contacts between Melo and Campos and between Hedges and Campos.

To discredit this evidence, Campos points to inconsistencies in the testimony of Melo, Hedges, and Kern. Campos also argues that because the three witnesses were testifying pursuant to cooperation agreements with the government, their testimony was inherently unreliable. He further contends that the district court should have given more weight to his own testimony and to the results of the polygraph examination. These arguments amount to little more than an attack on the credibility determinations of the district court--determinations which the district judge is in the best position to make and which are "`virtually unreviewable on appeal.'" United States v. Adipietro, 983 F.2d 1468, 1479 (8th Cir. 1993) (quoting United States v. Candie, 974 F.2d 61, 64 (8th Cir. 1992); see also United States v. Eberspacher, 936 F.2d 387, 389 (8th Cir. 1991). Here, the district court carefully considered all of the evidence presented, including the inconsistencies which had been highlighted by Campos' counsel on cross-examination, and made specific credibility findings concerning each of the witnesses. The court then approximated a quantity of drugs attributable to Campos. After reviewing the record, we cannot find that the district court's determination of drug quantity was clearly erroneous. Therefore, we affirm the district court's finding that Campos was responsible for distributing between fifteen and fifty kilograms of cocaine.

### B. Hearsay Evidence

Campos next argues that the district court erred in relying on hearsay evidence in making its sentencing determinations. Campos argues that hearsay statements attributed to accomplices of Campos

and admitted during the course of testimony from the government's witnesses were materially untrue and therefore cannot, consistent with due process, form a valid basis for his sentence.

We agree that a defendant "may not be sentenced on the basis of `misinformation of constitutional magnitude.'" United States v. Wise, 976 F.2d 393, 402 (8th Cir. 1992) (quoting United States v. Tucker, 404 U.S. 443, 447 (1972)), cert. denied, 507 U.S. 989 (1993). During sentencing, however, the guidelines permit the use of hearsay without regard to its admissibility at trial, provided that it has "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). We have held that this standard satisfies the demands of due process. Wise, 976 F.2d at 402.

Whether hearsay is sufficiently reliable for sentencing purposes "depends upon the particular circumstances of each case." Id. at 403. Under the circumstances of this case, the district court did not err in considering hearsay statements regarding the source of cocaine supplied to the government's cooperating witnesses. Initially, we note that the hearsay declarants were drug couriers who Campos himself confirmed had assisted him in distributing cocaine to Melo and Hedges. As such, if the federal rules of evidence were to apply at sentencing, these couriers would be deemed coconspirators and their statements would fit under an exception to the rule against hearsay. See Fed. R. Evid. 801(d)(2)(E). Furthermore, nothing in the record indicates that these accomplices had any reason to misrepresent the source of the drugs when making deliveries to Melo, Hedges, and Kern. Finally, to the extent that Campos challenges the reliability of the witnesses repeating the hearsay, we note that this argument is simply a restatement of Campos' earlier unsuccessful objections to the district court's credibility determinations. We observe, however, that the testimony of these witnesses was internally consistent with respect to the major participants in and general

operating procedures of the enterprise.  This internal consistency lends substantial indicia of reliability to the testimony.  We therefore conclude that the district court did not err in considering any of the evidence presented by the government.

### C.  Acceptance of Responsibility

Finally, Campos argues that the district court erred in refusing to grant him credit for acceptance of responsibility.  Under the Sentencing Guidelines, a defendant is entitled to a two-level decrease in the offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."  U.S.S.G. §3E1.1(a).  Determining whether a defendant qualifies for this reduction "is a question of fact which depends largely on the district court's credibility assessments."  United States v. Evans, 51 F.3d 764, 766 (8th Cir. 1995).  "On appeal, the district court's decision to grant or deny the reduction is afforded great deference and will not be disturbed unless it is clearly erroneous."  Id.

Campos argues that he took responsibility for his actions by pleading guilty and by admitting to the distribution of 3.5 kilograms of cocaine.  It is well settled, however, that a guilty plea "does not entitle the defendant to a reduction as a matter of right."  Id.  Furthermore, our cases demonstrate that acceptance of responsibility credit can properly be denied where a defendant minimizes his role in drug activities. See United States v. Abanatha, 999 F.2d 1246, 1251-52 (8th Cir. 1993), cert. denied, 114 S. Ct. 1549 (1994).  The district court found that Campos distributed far more than the 3.5 kilograms of cocaine he admitted to distributing--a finding which is amply supported by the record.  Where, as here, the district court reasonably determines that the defendant accepted responsibility for less than all of his criminal conduct, it is not clearly erroneous to deny a reduction in offense level.  See id.  We therefore affirm the district court's decision to deny a two-level reduction for acceptance of responsibility.

**III.  CONCLUSION**

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.