United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 96-3374

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Christopher Todd Drapeau, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  March 11, 1997
Filed:   July 28, 1997

_____

Before MAGILL,[1] JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

MAGILL, Circuit Judge.

Christopher Todd Drapeau pled guilty in the United States District Court for the District of South Dakota to the unlawful making of a firearm, in violation of section 5861(f) of the Internal Revenue Code, 26 U.S.C. § 5861(f) (1994).  During sentencing, the district court enhanced Drapeau's sentence under several provisions of the United States Sentencing Guidelines (U.S.S.G.), including U.S.S.G. § 3A1.2(a) (1995) (status of victim as a government official); U.S.S.G. § 3B1.1(a) (1995) (being a leader of a

_____

[1]The Honorable Frank J. Magill was an active judge at the time this case was submitted and assumed senior status on April 1, 1997, before the opinion was filed.

criminal activity involving five or more participants); and U.S.S.G. § 3C1.1 (1995) (obstructing or impeding administration of justice).  Drapeau now appeals and challenges each of these enhancements.  We affirm in part, reverse in part, and remand for resentencing.

## I.

On December 29, 1995, Drapeau and his friends, Lloyd Ross, Jr., Keith Heth, Jr., Royce Kirkie, and a juvenile, gathered at the Fort Thompson, South Dakota, home of Drapeau's relative, Shirley Drapeau O'Day.  During the late afternoon, the group began consuming beer, vodka, and sloe gin.  Sometime after the drinking began, Drapeau told the group that he wanted to "get" Joe Sazue, a local police officer.  See Trial Tr. at 11 (testimony of Lloyd Ross, Jr.).

Officer Sazue, who had recently arrested one of Drapeau's relatives, had been given the nickname "Packman" by Drapeau and his friends.  Drapeau explained to his friends that he "was going to blow [Packman's] car." Id.  After sending Kirkie out to obtain gasoline, Drapeau directed the juvenile member of the group to find dish soap.  Drapeau then demonstrated to his friends how to construct firebombs out of gasoline, liquid dish soap, a cloth wick, and a glass bottle.  Drapeau explained that the liquid soap would "make the gas spread." Id. at 18.  Drapeau and his friends then proceeded to construct at least four firebombs.

Drapeau directed Kirkie and Heth to test the firebombs.  At approximately 10 p.m. one of the test bombs, which was thrown on the street behind a housing unit for senior citizens 200 feet away from the O'Day residence, ignited and sustained a fire.  A second test bomb, which was thrown in front of the O'Day residence, failed to ignite. See Appellee's Add. at 8 (Report by Crow Creek Sioux Tribe Criminal Investigator's Office of interview with Royce Lance Kirkie).

Drapeau then told Heth and the juvenile to firebomb Officer Sazue's car. See Trial Tr. at 19 (testimony of Lloyd Ross, Jr.). Officer Sazue lived with his family in a home adjacent to the O'Day residence. Heth and the juvenile smashed one bomb on the pavement of Officer Sazue's driveway and placed another bomb next to Officer Sazue's car, which was parked approximately eight feet from Officer Sazue's house. Although the wicks of the bombs had been lit, neither bomb ignited.

Officer Sazue testified that, at approximately 1 a.m. on December 30, 1995, he heard dogs barking and a "pop." See Tr. of Keith Heth, Jr., Sentencing Hr'g at 9 (testimony of Officer Joe Sazue). At 9 a.m. that morning, Officer Sazue was notified that there was glass in his driveway. Officer Sazue discovered glass fragments and traces of a blue-colored waxy substance that smelled like gasoline. Officer Sazue also discovered an intact firebomb made from a sloe gin bottle near his car.

Drapeau, Ross, Heth, Kirkie, and the juvenile were charged with the unlawful making of a firearm, in violation of 26 U.S.C. §§ 5845(a)(8), 5845(f), 5861(f), and 5871 (1994), and with the unlawful possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871 (1994). Drapeau pled not guilty to the charges and proceeded to trial. After the first day of trial, during which Ross testified against Drapeau, Drapeau changed his mind and pled guilty to the charge of unlawfully making a firearm.

For sentencing, the district court determined that Drapeau, who had been arrested some 85 times and had 14 convictions, see PSI at 6, has a criminal history category of II. See J. at 6, reprinted in Appellant's Add. at 6. Drapeau was ultimately sentenced according to a total offense level of 30. Pursuant to U.S.S.G. § 2K2.1(a)(5) (1995), the base offense level for Drapeau's offense of conviction is 18. The district court enhanced Drapeau's sentence by: one point because there were four firebombs involved in Drapeau's offense, see U.S.S.G. § 2K2.1(b)(1)(A) (1995); two points because the offense involved a destructive device, see U.S.S.G. § 2K2.1(b)(3) (1995);

and two points because Drapeau used a juvenile to commit the offense, see U.S.S.G. § 3B1.4 (1995), for a total offense level of 23. These enhancements are not challenged on appeal. The district court also reduced Drapeau's offense level by two points for acceptance of responsibility. See U.S.S.G. § 3E1.1(a) (1995).

The district court also enhanced Drapeau's sentence by three points because the offense was motivated by Officer Sazue's status as a police officer and because Officer Sazue was a victim. See U.S.S.G. § 3A1.2(a). The district court also applied a four point enhancement to Drapeau's sentence under U.S.S.G. § 3B1.1(a), finding "that Mr. Drapeau was the organizer or leader of criminal activity that involved five or more participants." Sentencing Tr. at 15. Finally, the district court enhanced Drapeau's sentence for two points for Drapeau's obstruction of justice. See U.S.S.G. § 3C1.1.

The enhancement for obstruction of justice was based on Drapeau's conduct after his arrest and pending trial. In a written statement, Drapeau's friend Heth declared that:

> Well I was in Hughes County Jail, Chris [Drapeau] told me that, [h]e was going to take care of [C]hico [Lloyd Ross, Jr.] meaning he was going to hurt him for test[if]ying agai[n]st him. I was afraid of Chris coming after me if I said anything. [H]e also said what goes around comes around.

Statement of Keith Heth, Jr. (July 22, 1996). At his own sentencing hearing, Heth testified that he was frightened of Drapeau because "[h]e's a big guy," Heth Sentencing Tr. at 50, and because Drapeau has "a lot of family in jail. He's been in before, and he told [Heth] he's got a lot of friends." Id. at 54. Heth also alleged that Drapeau had once run over Heth's ankle with a car, badly fracturing Heth's ankle. Id. at 54-55.

Heth testified that he received letters from Drapeau while Heth was in jail, asking Heth if he "was going to keep [his] mouth shut or not . . . ." Id. at 51. Heth told

Drapeau that he would not testify.  Id.  Heth also testified regarding threats Drapeau made about  Ross:

> Question (from defense counsel):  Okay.  Did you hear Chris [Drapeau] make any threats against Chico [Lloyd Ross, Jr.] while you were in jail here?
>
> Answer (from Keith Heth, Jr.):  Yes.
>
> Q.      How did that come about?
>
> A.      I was in Cell Block C and [Drapeau] was in D.  They're right beside each other.  And he talked through[] the fence, and he was talking through the vent when I was first here.  And he said, don't worry about[ it.  W]e're going to get Chico.  If he comes to jail here, you know, we got him whatever.  I was getting out on the third.  I told him I was getting out, and he asked me--or he told me whatever you say, told me, you know, better get that black, you know, he called him black--excuse my language. He called him black f word.
>
> Q.      Did he say the reason that he wanted to get Chico?
>
> A.      Because he told.
>
> Q.      Okay.  So when he was making threats against Chico because he talked, you were afraid if you talked you would get the same treatment; right?
>
> A.      Yes.
>
> Q.      Were you afraid of what Chris could do?
>
> A.      Yes.

Heth Sentencing Tr. at 51-52.  Drapeau also stated, according to Heth, that if Ross "'does any time, I would see him on down the line.  We'll get him.'"  Id. at 54.

The threats Drapeau made against Ross were communicated from Drapeau to Heth, from Heth to Lucas McBride, and from McBride to Ross. In an affidavit, Ross declared that he had been told that if he "assisted in the investigation or participated as a witness, in the prosecution of Mr. Drapeau, that [Ross] would be beaten or otherwise assaulted." Aff. of Lloyd Emery Ross, Jr. at 1 (Aug. 14, 1996), reprinted in Appellee's Add. at 3. Ross also declared that he knew Drapeau to be "a person who is capable of inflicting physical violence," id. at 1-2, reprinted in Appellee's Add. at 3-4, and that Ross was afraid that he would be assaulted by Drapeau in jail. Id. at 2, reprinted in Appellee's Add. at 4.

Based on this evidence, the district court found that Drapeau had obstructed justice by intimidating a witness. See Drapeau Sentencing Tr. at 24-25.

With these sentencing enhancements, Drapeau had a total offense level of 30. While the sentencing range permitted by the sentencing guidelines is 108-135 months, the statutory maximum sentence for making an illegal firearm is ten years. See 26 U.S.C. § 5871. The district court sentenced Drapeau to the statutory maximum sentence. Drapeau now appeals the sentencing enhancements for the status of the victim, Drapeau's leadership role in the offense, and Drapeau's obstruction of justice.

## II.

Drapeau challenges three of the sentencing enhancements levied against him at sentencing. "The district court's interpretation of the sentencing guidelines is a question of law subject to de novo review, while its factual determinations are subject to review only for clear error." United States v. Larson, 110 F.3d 620, 627 (8th Cir. 1997). Drapeau first argues that the district court erred in enhancing his sentencing level by three points pursuant to U.S.S.G. § 3A1.2(a) because of Officer Sazue's status as a government official. We agree.

Section 3A1.2(a) provides that a defendant's sentencing level should be enhanced by three points if

> the victim was a government officer or employee; a former government officer or employee; or a member of the immediate family of any of the above, and the offense of conviction was motivated by such status . . . .

U.S.S.G. § 3A1.2(a). Application note 1 of the commentary for § 3A1.2 explains that "[t]his guideline applies when specified individuals are victims of the offense. This guideline does not apply when the only victim is an organization, agency, or the government." U.S.S.G. § 3A1.2, comment. (n.1) (1995).

> In applying this enhancement, the district court explained that

> any attempt to cause injury or damage is basically the same crime as actually succeeding in causing the injury or damage. And the evidence is clear that the intent of the bomb or bombs was that it or they actually hit, strike, and cause damage to the parked vehicle. And I believe this particular car was selected because the owner of the car was a police officer that this defendant was attempting to intimidate. So that it is appropriate that [§ 3A1.2(a)'s three point] adjustment be made. Clearly Mr. Sazue was a government officer and the crime was motivated by his status. In addition, there would have been the substantial risk of injury to him or others at his residence since the throwing or placement of these bombs was directed toward his vehicle at his personal residence.

> And, so, I think that [Officer Sazue] was the victim of, at least, a threat to his person and to his property, and the objection is overruled.

Sentencing Tr. at 12.

On appeal, Drapeau argues that the district court erred in enhancing Drapeau's sentence under this guideline because "Officer Sazue was not directly assaulted,

attacked, injured or otherwise damaged in any way, shape or form. It is Appellant's position that this was a crime against property, specifically an automobile. An automobile cannot be a victim of a crime." Appellant's Br. at 4. We reject this argument, and hold that the district court did not clearly err in its finding of facts.

When Drapeau ordered his cohorts to firebomb Officer Sazue's personal automobile, he did so not to obtain revenge against the vehicle, but to attack Officer Sazue because of Officer Sazue's official status. In committing vandalism and attempted arson against the property of Officer Sazue, Drapeau sought to gain revenge against Officer Sazue because Officer Sazue had arrested a relative of Drapeau. It was only through sheer luck and the fortuitous incompetence of Drapeau's coconspirators that Drapeau's attempt to destroy Officer Sazue's vehicle failed. Had either of the firebombs deployed against Officer Sazue performed as effectively as the test bomb used behind the seniors' residence, Officer Sazue's car would have been destroyed, victimizing Officer Sazue through the loss of his vehicle. See Heth Sentencing Tr. at 26-27 (testimony of BATF Special Agent Doug Moore) ("You wouldn't have to get [the firebomb] into the interior of the vehicle. If you take a device like this, it was in close proximity to the underside of the vehicle, it's not a type of object as good as shielding whatever as on the outside. It certainly could balloon into the interior up into the engine [com]partment and then sheer--vehicle fires, they're very dense. Vehicles burn very quickly."). In addition, if the firebombs had detonated, there would have been a significant likelihood that the fire would have spread to Officer Sazue's home, located only eight feet away from the car, where Officer Sazue and his family had retired for the night. See id. at 24-25 (testifying that the particular type of firebomb used was designed "[t]o burst and cause resulting fire, to spread fire to other combustible materials that may be in the area"). Even though this tragedy was avoided, Drapeau's targeting of Officer Sazue left the officer "pretty upset and afraid for" himself and his family. See Heth Sentencing Tr. at 17 (testimony of Officer Sazue). We agree with the district court that Officer Sazue was very much a victim of Drapeau's conduct.

We nevertheless conclude that the district court erred as a matter of law in enhancing Drapeau's sentence under this guideline. Upon review of the sentencing transcript, it is apparent that the district court enhanced Drapeau's sentence under U.S.S.G. § 3A1.2(a) because of Drapeau's conduct after he constructed the firebombs--specifically, Drapeau's attempt to commit arson against Officer Sazue's property. See Drapeau Sentencing Tr. at 12 (noting that "there would have been the substantial risk of injury to [Officer Sazue] or others at his residence since the throwing or placement of these bombs was directed toward his vehicle at his personal residence"). Drapeau was not, however, convicted of attempting to commit arson. Rather, Drapeau's offense of conviction was illegally making a firearm, in violation of the Internal Revenue Code. See 26 U.S.C. § 5861(f).

In sentencing a defendant, a district court is usually empowered to consider relevant conduct by a defendant, including "all acts and omissions committed" and assisted by the defendant, and "all reasonably foreseeable acts and omissions of others in furtherance of [a] jointly undertaken criminal activity," unless a guideline "otherwise specifie[s]" that such relevant conduct should not be considered. See U.S.S.G. § 1B1.3(a)(1)(A) & (B) (1995). Section 3A1.2(a) explicitly provides that its enhancement for the status of the victim as a government official is proper only where the "offense of conviction" is motivated by the victim's status. See U.S.S.G. § 3A1.2(a). Application note 1 to § 3A1.2 clarifies that the government official must be the "victim[] of the offense." U.S.S.G. § 3A1.2, comment. (n.1) (emphasis added).[2]

_____

[2]Other sections of the sentencing guidelines that provide for the enhancement of a defendant's sentence based on the status of the victim have been interpreted to allow the sentencing court to consider relevant conduct that is not, itself, an element of the crime of conviction. See, e.g., U.S.S.G. § 3A1.1(b) (1995) (providing for a two point sentence enhancement if a "defendant knew or should have known" that a victim was "particularly susceptible to the criminal conduct" on the basis of age, physical or mental condition, or some other vulnerable characteristic); United States v. Haggard, 41 F.3d 1320, 1326 (9th Cir. 1994) (noting that a majority of courts considering § 3A1.1(b)

In applying § 3A1.2(a), we are bound by application note 1's interpretation of the guideline.  See United States v. Triplett, 104 F.3d 1074, 1081-82 (8th Cir.) ("Commentary to the Guidelines is binding on the courts when it interprets or explains a guideline, unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." (quotations and citations omitted)), cert. denied, 117 S. Ct. 1837 (1997).  We believe that the textual clarity of § 3A1.2(a) and application note 1 is plain: § 3A1.2(a)'s enhancement is proper only where a government official is the victim of a defendant's offense of conviction. Because § 3A1.2(a) specifies that only the offense of conviction is to be considered, the district court erred in considering other relevant conduct.  See U.S.S.G. § 1B1.3(a).[3]

In the circumstances of this case, therefore, Drapeau's sentence may be enhanced under § 3A1.2(a) only if Officer Sazue was the victim of Drapeau's offense of

_____

have concluded "that courts properly may look beyond the four corners of the charge to the defendant's underlying conduct in determining whether someone is a 'vulnerable victim' under section 3A1.1"  (citing cases and noting circuit split)).

[3]This appears to be, almost, a question of first impression. In United States v. Klump, 21 F.3d 1117, 1994 WL 143943 (9th Cir. 1994) (unpublished) (per curiam), a former government informant, who had previously been convicted of a felony, armed himself with a firearm and made a threatening phone call to a government official, whom the informant believed had leaked information of the informant's cooperation with the government to the informant's criminal associates.  The informant was convicted of being a felon in possession of a firearm, and the district court enhanced the informant's sentence under § 3A1.2.  The Klump court reversed, concluding that the informant's offense had not been motivated by the status of the government employee. See id. at *2.  Judge Reinhardt, concurring specially, disagreed with this conclusion. Judge Reinhardt argued that, although the offense of conviction had been motivated by the status of the government official, a sentence enhancement was improper because "the adjustment described in § 3A1.2(a) applies only where there is a 'victim' of the offense of conviction, and there can never be a 'victim' of the felon-in-possession offense set forth in 18 U.S.C. § 922(g)." Id. at *3 (emphasis added).

-10-

conviction: the unlawful making of a firearm in violation of § 5861(f). Whether Officer Sazue was a victim of Drapeau's violation of § 5861(f) is a question of fact for the district court to answer in the first instance. See United States v. Stover, 93 F.3d 1379, 1386 (8th Cir. 1996). Accordingly, we remand this matter back to the district court for a determination of whether Officer Sazue was a victim of Drapeau's offense of conviction.

## III.

Drapeau next challenges the district court's enhancement of Drapeau's sentence for Drapeau's role as an organizer or leader of a criminal enterprise involving five or more persons. We conclude that the district court did not err in applying this four point sentence enhancement.

Section § 3B1.1(a) provides that "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase [the offense level] by 4 levels." U.S.S.G. § 3B1.1(a). This "adjustment for being an organizer or leader is intended to reflect relative responsibility compared to other participants in the crime." United States v. Rodriguez, 112 F.3d 374, 377 (8th Cir. 1997). Application note 4 of this guideline directs sentencing courts to consider

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. (n.4). See also Rodriguez, 112 F.3d at 377 (applying factors); United States v. Blumberg, 961 F.2d 787, 790-91 (8th Cir. 1992) (same). In

applying these factors, this Court has "recognized a broad definition of the term 'organizer or leader.'" Id. at 791.

The group that constructed the firebombs and attempted to use them to destroy Officer Sazue's automobile consisted of five members: Drapeau, Ross, Heth, Kirkie, and a juvenile. Contrary to Drapeau's argument that the group had no real leader, there is no doubt that Drapeau was the leader and organizer of the group. It was Drapeau who first proposed "getting" Officer Sazue, based on Drapeau's personal motives, and it was Drapeau who formulated the plan to construct firebombs to destroy Officer Sazue's vehicle.

Although § 3B1.1's enhancement "does not apply to a defendant who merely suggests committing the offense," U.S.S.G. § 3B1.1, comment. (n.4), Drapeau did far more than merely proffer suggestions to his friends. It was Drapeau who directed his friends to obtain the ingredients for the firebombs, and Drapeau's friends obeyed his commands. Drapeau instructed his friends in the craft of constructing firebombs, including the critical step of adding soap to gasoline, whereby napalm is created. See United States v. Hedgcorth, 873 F.2d 1307, 1310 (9th Cir. 1989) ("The firebombs were constructed out of plastic water jugs filled with gasoline, motor oil, and soap. The liquids combined to produce a gelatinous mixture chemically equivalent to napalm. When ignited, napalm produces a more intense, more confined, and longer-lasting incendiary effect than gasoline alone."). Drapeau directed his friends to test the firebombs, and he ordered his friends to use the firebombs against Officer Sazue's property. "Where, as here, one individual in a multidefendant enterprise makes the critical strategic and operational decisions on behalf of the group (unilaterally answering questions such as 'what? when? where? how? . . .'), that individual exhibits precisely the sort of characteristics that are emblematic of an organizer or leader." United States v. Talladino, 38 F.3d 1255, 1261 (1st Cir. 1994). Based on the record in this case, we cannot say that the district court clearly erred in finding that Drapeau was an organizer or a leader.

## IV.

Finally, Drapeau argues that the district court erred in enhancing Drapeau's sentence under U.S.S.G. § 3C1.1 by two points for Drapeau's obstruction of justice by intimidating witnesses. Specifically, Drapeau argues that the evidence relied on by the district court--hearsay by Heth and Ross--was untrustworthy. We disagree.

Application note 3(a) to U.S.S.G. § 3C1.1 provides that a defendant's "threatening, intimidating, or otherwise unlawfully influencing a codefendant, witness, or juror, directly or indirectly" warrants a two point sentence enhancement for obstruction of justice. U.S.S.G. § 3C1.1, comment. (n.3(a)). In this case, Heth testified during his own sentencing hearing that Drapeau had sent Heth suggestive letters regarding Heth's possible decision to testify, and that Drapeau spoke with Heth and threatened to assault Ross because Ross cooperated with the government. Heth further testified that, because of Drapeau's size, family connections, and Heth's history with Drapeau, these threats against Ross intimidated Heth. Ross asserted in an affidavit that Drapeau's threats against Ross eventually reached Ross, and that Drapeau's threats intimidated Ross. If credited, these allegations clearly satisfy the standards of § 3C1.1. See United States v. Capps, 952 F.2d 1026, 1028-29 (8th Cir. 1991) (obstruction of justice enhancement proper where, although threat was not communicated directly to witness by defendant, defendant "communicated a violent threat against a key government informant at a critical point in the investigation and in a manner that frightened the bartender [who heard the threat] into reporting it to the authorities").

A district court may consider hearsay during sentencing "without regard to its admissibility at trial, provided that it has 'sufficient indicia of reliability to support its probable accuracy.'" United States v. Campos, 87 F.3d 261, 264 (8th Cir.) (quoting U.S.S.G. § 6A1.3(a) (1995)), cert. denied, 117 S. Ct. 536 (1996). "Whether hearsay

-13-

is sufficiently reliable for sentencing purposes depends upon the particular circumstances of each case." Id. (quotations and citations omitted).

In the circumstances of this case, we do not believe that the district court erred in crediting the Heth and Ross hearsay. The district court presided at Heth's sentencing and was "in the best position to observe the demeanor of the witness[] and to assess [the] credibility" of Heth's testimony. United States v. Risken, 869 F.2d 1098, 1100 (8th Cir. 1989). Further, Ross's affidavit is consistent with Heth's testimony, and such "internal consistency lends substantial indicia of reliability to the testimony." Campos, 87 F.3d at 264. Accordingly, we do not believe that the district court erred in enhancing Drapeau's sentence by two points for his attempted obstruction of justice.

## IV.

We affirm the district court's enhancement of Drapeau's sentence for Drapeau's leadership role in the offense and for Drapeau's obstruction of justice. We reverse the district court's enhancement of Drapeau's sentence because of Officer Sazue's status as a government official and remand this matter to the district court for a determination of whether Officer Sazue was the victim of Drapeau's offense of conviction.

JOHN R. GIBSON, Circuit Judge, concurring specially.

I concur in the result and the judgment, and in all of the court's opinion except for the full paragraph on page 8 of the opinion. I think this paragraph is unnecessary to the decision the court reaches in Part II.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.