**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                          No. 96-4547

JAMMIE DARNELL LAWRENCE,
Defendant-Appellee.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 96-4548

JAMMIE DARNELL LAWRENCE,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-95-506-A)

Argued: June 6, 1997

Decided: August 27, 1997

Before HALL and NIEMEYER, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed in part, reversed in part, and remanded by unpublished opin-
ion. Senior Judge Phillips wrote the opinion, in which Judge Hall and
Judge Niemeyer joined.

_____

**COUNSEL**

**ARGUED:** Thomas More Hollenhorst, Assistant United States Attorney, Alexandria, Virginia, for Appellant. James Clyde Clark, Alexandria, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Alexandria, Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PHILLIPS, Senior Circuit Judge:

Jammie Darnell Lawrence was convicted, after a bench trial, of various drug-related offenses. At sentencing, the district court granted a two-level reduction in sentence for acceptance of responsibility, rejected the government's request for a two-level enhancement for possession of a dangerous weapon, but granted its request, over Lawrence's objection, for an enhanced sentence based on Lawrence's possession of more than 150 kilograms of cocaine. Both the government and Lawrence appealed. We affirm in part, reverse in part, and remand for resentencing.

I

Defendant Jammie Darnell Lawrence was a mid-level distributor selling powder cocaine in an illicit drug organization headed by Aslan Paulino. Paulino obtained kilogram quantities of cocaine from Puerto Rico that were transported to "stash houses," whence they were distributed to Lawrence and other distributors in the following manner: Paulino employed a number of workers who would receive coded telephone messages directing their distribution of specified quantities from the stash houses to the mid-level distributors such as Lawrence.

Lawrence was arrested and released on bond on November 17, 1995, then charged in a ten-count indictment on December 13, 1995.

2

Count I charged him with conspiracy to possess with intent to distribute and distribution of five or more kilograms of cocaine and distribution of 50 or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846. Counts II through IX charged him with a variety of money laundering offenses, and Count X sought the forfeiture of drug-related assets. Lawrence waived his right to a jury trial and was tried in a bench trial in February 1996.

At the bench trial, the court heard evidence from several members of the organization. Juan Morban, one of the "stash house" couriers, testified that he delivered cocaine to Lawrence on four to six occasions with deliveries of two to five kilograms, and picked up money from him seven or eight times. Morban testified that he carried a gun when he visited Lawrence. Joselito Ramos testified that he delivered one to three kilograms of cocaine to Lawrence five or six times, and picked up money from him on two to four occasions. Fernando Mercedes testified that he delivered one to six kilograms to Lawrence "twice a week" beginning in December 1994, and collected money from Lawrence two to four times.

Paulino, the undisputed kingpin of the operation, testified for the government at Lawrence's trial. He claimed that he supplied Lawrence with two to four kilograms of cocaine once a week beginning in 1992 or 1993 and continued to do so until his arrest in March 1995, using his insulated method. Paulino also testified that Lawrence had told him that he kept weapons in his car. Kermitt Oliver, one of Lawrence's primary customers, testified that Lawrence supplied him with two to three kilograms of cocaine, two or three times a week, for three years.

When Paulino, Morban, and Mercedes were arrested in March 1995, police officers seized from Paulino's residence a bullet-proof vest given to him by Lawrence, and a gun-cleaning kit. Officers also seized various guns and drug paraphernalia from one of the stash houses. When Lawrence was arrested, the police seized from a car linked to him by photographs and court summons various incriminating items: a machine gun magazine, a bullet-proof vest, a gun-cleaning kit, and a handgun magazine.

Following Lawrence's conviction on eight of the ten counts, the probation officer's Pre-Sentence Investigative Report (PSR) recom-

3

mended that he be sentenced at an offense level of 40, Criminal History Category I, with a base level of 38 under U.S. Sentencing Guidelines Manual §§ 2D1.1(a)(3) and (c)(1) (1995), including a two-level enhancement for possessing more than 150 kilograms of cocaine. The PSR also recommended a two-level enhancement for possession of a dangerous weapon under § 2D1.1(b)(1). Finally, the PSR recommended rejection of Lawrence's request for a two-level reduction in sentence for acceptance of responsibility.

At sentencing, the district court found that Lawrence had possessed more than 150 kilograms of cocaine. Lawrence maintained that he had received only 20 kilograms of cocaine from Paulino, but the court found that the testimony of Paulino, Morban and Oliver was "more than sufficient to support the probation officer's use of the higher quantity of 150 or more kilograms of cocaine." JA 290. Pursuant to § 2D1.1(c)(1) of the Guidelines, this resulted in a base offense level of 38. The district court, however, granted Lawrence's motion for a two-level reduction in his sentence level for his acceptance of responsibility, noting that Lawrence had waived his right to a jury trial and stood for a bench trial instead. The district court also refused the government's request to increase Lawrence's sentence for possession of a dangerous weapon under § 2D1.1(b)(1), concluding the government had not established that Lawrence ever possessed a firearm.

Ultimately, Lawrence was sentenced to 188 months confinement on four of the counts, along with a concurrent sentence of 120 months as to the other four, at an offense level of 36, Criminal History Category I. The government appeals the district court's refusal to grant the enhancement and its decision to grant the reduction. Lawrence cross-appeals, contending that his offense level should have been 34 because there was insufficient evidence to support the two level enhancement for possession of more than 150 kilograms of cocaine.

II

In reviewing the district court's application of the sentencing guidelines, we review factual determinations for clear error, while legal determinations are subject to de novo review. United States v. Blake, 81 F.3d 498, 503 (4th Cir. 1996). The cross-appeals raise three issues: (1) whether the district erred in determining that Lawrence

4

possessed more than 150 kilograms of cocaine; (2) whether the district court erred in granting Lawrence's request for a two-level reduction in sentence for acceptance of responsibility; and (3) whether the district court erred in concluding that Lawrence did not possess a dangerous weapon under § 2D1.1(b)(1) of the Guidelines. We take these in turn.

A.

Lawrence's only claim is that the district court clearly erred in determining that he possessed more than 150 kilograms of cocaine. He contends that the evidence upon which the court relied was internally inconsistent and unreliable. We disagree. The government needed only to establish the amount possessed by a preponderance of evidence. See United States v. Engleman, 916 F.2d 182, 184 (4th Cir. 1990) (citing United States v. Powell, 886 F.2d 81, 85 (4th Cir. 1989)). In finding the 150 kilogram amount, the court relied on the testimony of several of Lawrence's coconspirators which, taken together, indicated that Lawrence had bought and sold well over 150 kilograms of cocaine over the two years that Lawrence was part of the drug ring. We briefly recapitulate that testimony. Aslan Paulino, Lawrence's supplier, testified that he supplied two to four kilograms per week to Lawrence for at least two years, which minimally would amount to more than 200 kilograms. Kermitt Oliver testified that he had purchased two to three kilograms of cocaine from Lawrence in a typical transaction, and that he bought cocaine from Lawrence two to three times per week for three years. Against this testimony, Lawrence only points out that Paulino also testified inconsistently that he had only sold a total of 30 kilograms to Lawrence throughout the conspiracy, and that Oliver said that he purchased anywhere from 400 to 2200 kilograms of cocaine from Lawrence, ultimately admitting that he did not know the total amount he had purchased.

These inconsistencies go only to the weight to be ascribed to the testimony of these two witnesses, hence to their credibility as to those portions unfavorable to Lawrence. We of course owe special deference to such credibility determinations. See 18 U.S.C. § 3742(e) (1994); accord United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). We cannot find clear error here in the district court's find-

5

ing, despite the inconsistencies in the witnesses' testimony, that more than 150 kilograms were possessed.

B.

Section 3E1.1 of the Sentencing Guidelines provide for a two level reduction if the defendant accepts responsibility for his criminal conduct. In its commentary the Sentencing Guidelines Commission observed that a court could grant this reduction when a defendant truthfully admitted the conduct comprising the offense of conviction, but "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S. Sentencing Guidelines Manual § 3E1.1 commentary n. 1(a) (1995). We have previously held that in order for § 3E1.1 to apply, "a defendant must first accept responsibility for all of his criminal conduct." United States v. Gordon, 895 F.2d 932, 936 (4th Cir. 1990) (emphasis added).

The district court concluded that Lawrence had sufficiently demonstrated his acceptance of responsibility for his criminal conduct, stating,

> I remember I tried this case. It was a bench trial, and I do recall that in effect the defendant in what he said to the probation officer effectively admits the offense, and it was a relatively straightforward and simple trial, not a whole lot of issues in contest; and it was a bench trial, so that there were costs saved. Most defendants don't waive a jury, and this defendant did. I think he therefore deserves some credit for that. And he actually has agreed to and accepted all the elements of the offense.
>
> It is simply the quantity of drugs with which he disputes the government's position. And for those reasons, I think it is appropriate to give him a two credit for acceptance of responsibility.

JA 289.

6

Lawrence has correctly pointed out that standing trial is not necessarily inconsistent with an acceptance of responsibility. The Commission has acknowledged that a defendant may exercise his right to a trial to make a constitutional challenge to a statute, for example, yet still be entitled to an acceptance of responsibility reduction. See U.S. Sentencing Guidelines Manual § 3E1.1 commentary n. 2. Such a situation is "rare," however, and § 3E1.1 was "not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." Id. Though Lawrence waived his right to a jury trial, he nevertheless put the government to its burden of putting him to trial on disputed facts which the Government had the burden to prove.

By continuing to maintain through trial that he only possessed 20 kilograms of cocaine through the life of the conspiracy, Lawrence has not admitted to all relevant conduct for the offense of conviction and therefore is ineligible for the two-level reduction. See United States v. Taylor, 72 F.3d 533, 551 (7th Cir. 1995) (holding that a defendant's "false denial" of relevant conduct as found by the sentencing court precludes a claim of acceptance of responsibility). Cf. United States v. Campos, 87 F.3d 261, 265 (8th Cir. 1996) ("Where . . . the district court reasonably determines that the defendant accepted responsibility for less than all of his criminal conduct, it is not clearly erroneous to deny a reduction in offense level."); United States v. Falesbork, 5 F.3d 715, 721-22 (4th Cir. 1993) (affirming denial of reduction when defendant lied to probation officer about relevant conduct).

The Guidelines and our precedent make clear that a defendant must admit all relevant conduct to be eligible for a reduction, and Lawrence simply has not done so. Accordingly we hold that the district court clearly erred in granting Lawrence a two-level reduction in sentence for acceptance of responsibility.

C.

At sentencing the government alleged that Lawrence had possessed a dangerous weapon in furtherance of the drug conspiracy, and therefore requested a two-level increase in Lawrence's sentencing level

pursuant to § 2D1.1(b)(1) of the Guidelines. The district court refused to grant the enhancement, stating,

> In terms of the gun issue, I am also troubled that I don't think there is enough evidence there for sentencing purposes to give this defendant a two point enhancement for having a firearm. No firearm was found on him. The testimony was diminimous (sic) that somebody had once seen him with the firearms in these transactions.
>
> The fact that bullets or something may have been found, I don't think is sufficient. The government didn't charge him with that type of offense, and I am not going to start imposing effectively new convictions in the context of sentencing. So, I am not giving him the enhancement of those two points.

JA 289-90. The government contends the district court failed to consider its argument that even if Lawrence did not himself possess a dangerous weapon, he met the requirements of § 2D1.1(b)(1) because he reasonably could have foreseen that other coconspirators possessed dangerous weapons in furtherance of the conspiracy.

We have held that a defendant should receive this enhancement when it is reasonably foreseeable to him that his coconspirators possessed dangerous weapons that are connected with the conspiracy. See United States v. Hunter, 19 F.3d 895, 896 (4th Cir. 1994); United States v. Nelson, 6 F.3d 1049, 1056 (4th Cir. 1993); United States v. White, 875 F.2d 427, 433 (4th Cir. 1989). Accordingly, weapons possessed by Lawrence's coconspirators are attributable to Lawrence for sentencing purposes, so long as Lawrence could reasonably foresee that his coconspirators possessed the weapons, "unless it is clearly improbable that the weapon was connected with the offense." U.S. Sentencing Guidelines Manual § 2D1.1 commentary n. 3 (1995).

The government presented a strong circumstantial case to support its claim that Lawrence thus "possessed" firearms to further the conspiracy. The police seized a pistol grip shotgun, a handgun, and ammunition from one of Paulino's stash houses, and a bullet-proof vest and a gun cleaning kit from Paulino's home. Paulino testified that

8

Lawrence had given him the vest, and that Lawrence had told Paulino that he kept guns in his car. Paulino also testified that he had observed firearms in Lawrence's apartment. Four other handguns were seized from conspiracy members' vehicles. Morban and Oliver testified that they were armed during transactions with the defendant, and Oliver testified that he had seen weapons in Lawrence's vehicles. Finally, authorities seized a bullet-proof vest, a gun carrying bag, a gun cleaning kit and ammunition from a car that also contained personal items attributable to Lawrence, including photos of Lawrence and a summons for Lawrence under one of his aliases.

While Lawrence responds that the government could not make a direct link between Lawrence and the weapons, at a minimum the government made a showing sufficient to prove that Lawrence reasonably should have foreseen that his coconspirators regularly used dangerous weapons. Relying exclusively on the somewhat less conclusive evidence of Lawrence's own possession of weapons, the district court clearly erred in determining that Lawrence should not receive a two-level increase in his sentence.

III

While the district court correctly concluded that Lawrence possessed more than 150 kilograms of cocaine, it clearly erred in providing a two-level reduction in sentence for acceptance of responsibility and in failing to order a two-level increase in Lawrence's sentence level for possession of a dangerous weapon. Accordingly, we affirm in part, reverse in part and remand for resentencing consistent with this opinion.

<u>AFFIRMED IN PART, REVERSED IN PART,</u>
<u>AND REMANDED FOR RESENTENCING</u>

9